QUINTON v. BURTON, ROAD SUPERVISOR, ETC.

1. **Fences:** ALONG LINE OF HIGHWAY: *animus dedicandi.* Where one plants a hedge along a highway, the legal presumption is that he intends the hedge to be on the line dividing his land from the highway, and he will be held to have dedicated any land lying outside of such hedge to the public, and he cannot afterwards erect and maintain, as against the public, a fence outside the hedge, to supplement it.

2. **Highways:** IMPROVEMENT OF: RIGHTS OF ADJOINING LAND OWNERS TO BE RESPECTED. The traveled and worked tracks of highways ought ordinarily to be in the center line thereof, unless there is a reasonable necessity for varying from the rule. And the fact that it would cost more to build a bridge in the middle, than at the east side, of a highway, was no sufficient reason why defendant should not have been enjoined from building it at the east side, when it appeared that, by so building it, plaintiff's hedge and shade trees would be destroyed.

3. ———: ———: SHADE TREES TO BE RESPECTED. Shade trees along a highway should be permitted to stand, when they do not interfere with the traveled track when located in the middle of the highway. *Bills v. Belknap,* 36 Iowa, 583, and *Everett v. City of Council Bluffs,* 46 Id., 66, followed.

4. ———: LOCATION OF BRIDGE BY ROAD SUPERVISOR: EQUITABLE CONTROL OF. A road supervisor, in locating and constructing a bridge, is subject to equitable control in an injunction proceeding. *McCord v. High,* 24 Iowa, 336, followed.

5. ———: BRIDGES: WIDTH OF. Bridges ought to be broad enough for the passage of all vehicles and machinery in ordinary use, which are drawn upon the highways.

*Appeal from Lee District Court.*

THURSDAY, SEPTEMBER 20.

ACTION in chancery to enjoin defendant from erecting a bridge upon a highway located along the line of plaintiff's land, which defendant proposes to erect upon the side of the road next to plaintiff's land and immediately adjacent thereto. Upon a trial on the merits, plaintiff's petition was dismissed, and judgment was rendered against him for damages resulting from the issuing of the preliminary injunction. He now appeals to this court.

*Cásey & Casey*, and *Hall & Huston*, for appellant.

*Van Valkenbury & Hamilton*, for appellee.

BECK, J.—I.  The defendant, as road supervisor, proposed to erect a bridge over a small ravine, or water way, crossing a highway located upon the west line of plaintiff's land.  He notified plaintiff to remove a certain rail fence and certain brush deposited by plaintiff in a ditch along the traveled track of the highway, claiming that they were in the highway and occupied the line upon which the bridge was proposed to be located, and therefore, prevented the beginning of the work.  The plaintiff insists that the fence is not within the highway and the brush was by him deposited in the ditch to prevent washing, which would encroach upon his fence and a hedge standing five feet inside of it.

A question which seems to be regarded by the parties as one of very great and controlling importance in the disposition of the case, is, whether the fence is in fact within the limits of the highway.  The defendant insists that it is; that the road was established by proper proceedings before the county authorities charged with the duty of establishing roads, and that the highway was duly established by law.  This plaintiff denies.  We find it unnecessary to consider the question of law and fact thus raised, for the following reasons: The plaintiff's grantor, many years before the occurrences which gave rise to this action, planted a hedge just inside the fence in question.  The distance between the hedge and fence is variously estimated, and seems to vary at different points.  The preponderance of the testimony shows that the distance will not average more than three feet.  The space between the hedge and fence is too narrow for cultivation.  The "stand" of the hedge was not good, or many of the plants were killed by gophers, so that alone it is not sufficient to "turn" stock.  The fence was left standing, and "brush" permitted to grow up to aid the hedge. The hedge is on the line of the other hedges along the road,

and the distance between it and the hedges or fences on the other side is about the width of the highway in other places. Plaintiff claims that the hedge and fence together are necessary to turn stock, and that he has held adverse possession of the land within the fence, so that the public are barred of any claim of right to the road under the proceedings to establish it. We will not inquire into the sufficiency of these proceedings, but will, for the present purposes connected with the case, concede that they were not regular and sufficient to establish the highway.

But we are of the opinion that the facts of the case show a dedication of the land outside of the hedge to the public use. When the hedge was planted, the highway was in use. It was planted for the purpose of a fence between the field and the highway. No man in his senses would have planted and maintained it at an average distance of three feet from the highway, and at the same time kept a fence on the line of the road. The legal presumption is that the person planting it intended the hedge to be on the line dividing the highway from his land. The fact that the line of the hedge corresponds with the hedges adjoining it along the road, and gives the usual width to the road, supports this presumption.

1. FENCES: hedge along line of highway: animus dedicandi.

But plaintiff insists that the hedge and fence together must be regarded as the fence dividing his land from the highway. Admit that they are so used. Yet it is evident that this cannot justify him in keeping the fence outside of the line of the hedge. The line of the hedge is the line of the road. When the hedge is supplemented with a fence, it should be on the line of the hedge. It is never heard of that farmers consume such an unnecessary breadth of ground for fences. Having, by planting and maintaining the hedge, established the *animus dedicandi*, plaintiff could not defeat the dedication by making fences so that they extended into the road as dedicated. As the *animus dedicandi* was manifested by the hedge, he was bound to remove his fence to the

line bounding the highway. It is plaintiff's duty to so remove the fence.

But as defendant claims the removal of the fence for no other purpose than to enable him to erect the bridge in the place proposed, which we shall show he has no right to do, and as it is not made to appear that the public suffers any inconvenience from the fence, but, on the contrary, it is shown affirmatively that it in no way impedes travel, the injunction ought not to have been dissolved and the bill dismissed for the reason that the fence encroaches upon the highway.

II. The highway is about sixty feet in width. Plaintiff's land lies on the east of it. From the fence in question to the west line of the road is about fifty-six feet. Upon these questions of distances the evidence is not clear and explicit, but the figures we have given are sufficiently accurate for our present purposes. A "gully" has been permitted to encroach upon the west side of the road to about the distance of thirty feet, throwing the traveled track to the east side of the land appropriated for the highway. The proposed bridge would occupy the line of the fence and approach to, or near to, the hedge. The "gully" on the east side of the traveled track threatened to encroach, or did encroach, upon the fence in question and the hedge. It was for the purpose of protecting the fence and the hedge that plaintiff filled it with "brush." This "brush," as well as the fence, defendant threatens to remove, and to build the proposed bridge upon the line of each.

*2. HIGHWAY: improvement of: rights of adjoining land-owners to be respected.*

It will be readily seen that the proposed bridge is to be erected adjacent, or at least very near, to the line between the road and plaintiff's land. There are young shade trees and shrubs between the fence and hedge, and outside the fence. These are not in the way of travel, if it pursues about the middle of the sixty feet reserved for the road. If the bridge be erected as proposed, they, or at least some of them, must be cut down. It will cost more to erect the bridge in the

middle of the road than at the east side, on account of the "gulley" on the west encroaching upon the highway.

We think the plaintiff has the right to require the defendant to build the bridge in the middle of the highway, for the reason that he will sustain damage if it is built, as proposed, on the east line. The ditch upon the east side, if the bridge is so built, will encroach upon plaintiff's hedge, which will result in injury to it. While the public have the right to the full breadth of the highway, they cannot so use it as to injure the adjoining property. The law will not permit road ditches to be so made as to destroy or injure hedges and fences, when it can be avoided, and the wants of the public do not require their construction in that manner. It may be, but the point we do not decide, that in no case should this be permitted without just compensation to the land owner for the injury he sustains.

The bridge proposed to be erected is to be of the breadth of fourteen feet. The highway is about sixty feet wide. The mere fact that it can be built more cheaply adjacent to plaintiff's land ought not to be the ground of imposing unjust burdens upon him. This is especially true in view of the fact that through the fault of some one, which the supervisor and his predecessors representing the public have not prevented, the "gully" on the west has been permitted or caused to encroach upon the highway, so that it now reaches almost if not quite to the middle of the road. The public in this way cannot impose burdens on land owners on the ground of saving expenses, when those very additional expenses are made necessary by the neglect of the public servants, the road supervisors. It cannot be doubted that the traveled and worked tracks of highways ought ordinarily to be on the center line thereof, and therefore we think this rule should always be observed, except in cases of reasonable necessity for varying therefrom. If no injury results or may result to any one from departing from the rule, it need not be rigidly followed.

III. As has been stated, the young trees and shrubs at the side of the road, off of the traveled track when located 3. ——:——: in the middle of the highway, did not obstruct shade trees to be respected. or interfere with the use of the public; they should therefore be permitted to stand. *Bills v. Belknap*, 36 Iowa, 583; *Everett v. The City of Council Bluffs*, 46 Iowa, 66.

IV. The construction of the bridge, including its proper location, is to be done by the supervisor in the exercise of ministerial duties, and is subject to control in the 4. LOCATION of bridges: equitable control. manner pursued in this action. *McCord v. High*, 24 Iowa, 336.

V. The bridge proposed to be erected by defendent was to have been fourteen feet in width. Of this plaintiff complains, and alleges that it is not of sufficient 5. BRIDGES: width of. breadth to permit him to cross it with his reaper. Defendant, however, testifies that he was willing to make it sixteen feet broad. It is sufficient to say, without determining the facts upon this point of the case, or without fixing the minimum width of bridges, that they ought to be broad enough to permit all farm machinery to be drawn over them, and indeed broad enough for the passage of all vehicles and machinery in use, which are drawn upon the public highways.

The decree of the district court is reversed, and the cause will be remanded for a decree in harmony with this opinion, forever enjoining defendant from erecting the bridge in the form and manner and at the location as set out in the pleadings of the parties.

REVERSED.