64 438
a109 431

64 438
f143 718

SCOTT ET AL. v. THE CITY OF DES MOINES ET AL.

1. Town Plat: SUFFICIENCY OF ACKNOWLEDGMENT: FINDING OF COUNTY JUDGE CONCLUSIVE. Under section 636 of the Code of 1851, it was for the county judge to determine the sufficiency of a certificate of acknowledgment to a town plat; and where the owner of the land filed

the plat for record, with the judge's approval thereof indorsed thereon, the owner's heirs could not afterwards be heard to allege that the acknowledgment was insufficient, for the purpose of claiming title to land dedicated by the plat to public use.

2. ———: CERTIFICATE OF COUNTY JUDGE: USE OF WORDS "SURVEY" AND "PLAT." Where a county judge certified upon a plat of land for town purposes, under section 636 of the Code of 1851, that he was satisfied that the provisions of the law had been fully complied with in the "survey" of the town, and ordered that the "plat" be recorded, *held* that the word "survey" included the construction and acknowledgment of the plat, and that the word "plat" included also the indorsements thereon.

3. ———: DEATH OF PROPRIETOR BETWEEN FILING AND RECORDING: DEDICATION NOT ANNULLED BY. Where a town plat was filed for record by the proprietor during his life-time, but the recorder neglected to record the same until after his death, *held* that, as against his heirs at least, the plat, when recorded, took effect from the date of filing, and was not abrogated by the death of the proprietor.

4. ———: DEDICATION OF "MARKET SQUARE:" PRESUMPTION FROM USE OF NAME: EXTRANEOUS EVIDENCE OF INTENTION. The designation of a parcel of land on a town plat as "Market Square" does not necessarily show a dedication of the land to the public; but, as against the heirs of the original owner, circumstances aside from the plat may be proved to show that the owner's intention was to dedicate it to public use. And the use of the name "*Market* Square" does not so conclusively show that the owner intended that it should be used for market purposes that a failure of the town to accept and use it for such purposes will defeat the dedication.

5. **City of Des Moines:** "MARKET SQUARE:" PROPERTY OF THE CITY. Upon consideration of this whole case, (see opinion,) *held* that "Market Square," in the city of Des Moines, was dedicated to public use by W. A. Scott, in 1856, under the statutes then in force, and that the petition of his heirs to have the title quieted in them was properly dismissed.

## *Appeal from Polk Circuit Court.*

### THURSDAY, OCTOBER 9.

ACTION to quiet title to a certain tract of land in the city of Des Moines, known as Market Square. The defendant, the city of Des Moines, filed an answer, in which it averred, among other things, that in January, 1856, one W. A. Scott, through whom the plaintiffs claim title, being then the owner of the land, made a statutory dedication of the same as pub-

lic ground.    The Chicago, Rock Island & Pacific Railroad
Company, and the Chicago, Burlington & Quincy Railroad
Company, intervened, claiming, under an ordinance of the city,
the right to occupy the land for depot purposes.    The court
dismissed the plaintiffs' petition, and they appeal.

*Baylies & Baylies* and *James Embree*, for appellants.

*Williamson & Kavanaugh*, for the city.

*T. S. Wright*, for the C., R. I. & P. R'y Co.

*Galusha Parsons*, for the C., B. & Q. R'y Co.

ADAMS, J.—In 1856, W. A. Scott, through whom both the
plaintiffs and the defendants claim, was the owner of a tract
of land which included the land in question.    As such owner,
he laid out the tract into lots, and made a plat thereof.
Whether he filed the same for record does not appear by
direct evidence; but it is shown that it was filed by some
one, and, as the land was owned by him, and as he made the
plat and sold lots by it, we think that the presumption is
that it was filed by him.    The plaintiffs insist, however, that,
conceding this to be so, what was done was insufficient to
constitute a statutory dedication.

The statute in force at that time, in relation to the platting
of land and dedication of streets and public grounds, required
that the land should be surveyed, and the lots marked by
stakes at the corners; that a map should be made, showing
where the stakes are set; that the plat should be acknowl-
edged and the acknowledgment certified upon the map; and
that the plat and acknowledgment should be presented to the
county judge, who, if satisfied that the law had been com-
plied with, should enter upon the plat an order that the whole
be recorded.    Code of 1851, sections 633, 634, 635 and 636.
The plat in question purports to have been made in accordance
with a survey; also to have been acknowledged before a

notary public, and presented to the county judge, who indorsed thereon an order that the same be recorded.

The plaintiffs insist, however, that the plat is insufficient, in that the land platted cannot be located, and that the certificate of acknowledgment is insufficient, in that it does not appear that the notary's seal was attached.

As to the first objection, we have to say that there are shown the sections containing the platted land, the direction and width of the streets, the dimensions of the lots, and stones are marked upon the map, with a recital that the same are shown upon the ground. We may assume that the stones did at the time appear upon the ground, and could have been found, and, if so, we think that the land could have been located.

As to whether the notary's seal was omitted from his certificate, or was attached and has become obliterated after the

1. TOWN PLAT: sufficiency of acknowledgment: finding of county judge conclusive. lapse of so long a time, is a question which admits of some doubt; but, according to the view which we have taken of the case, it is not important to determine what the fact is. It was for the county judge to determine the sufficiency of the certificate, and, in the absence of any fraud practiced upon W. A. Scott, we think that the judge's determination, and Scott's own act in filing the plat with the judge's order thereon, concluded him. In filing the plat, and thereby making it a public record, it appears to us that he must be considered as accepting the judge's finding, whether right or wrong, so far as his rights were concerned, and that no public interest can be subserved by allowing him, or those claiming under him, to dispute the correctness of the finding.

But it is said that the judge's certificate, as endorsed, does not show a finding in respect to the notary's certificate. The

2. ——: certificate of county judge: use of words "survey" and "plat." judge's certificate is in these words: "I, Thomas H. Napier, county judge of Polk county, and state of Iowa, being fully satisfied that the provisions of the law have been fully complied with

by Wilson A. Scott, in the survey of the town of Des Moines, it is therefore ordered that the plat of said town be recorded." The position taken by the plaintiffs is, that the judge appears to have been satisfied only that the provisions of the law had been complied with in the survey. But we think that the county judge used the word "survey" as including the construction and acknowledgment of the plat. The very fact that he made the order shows that he understood that the provisions of the law had been complied with in all respects.

But it is said that the order is insufficient, in that it directs merely that the plat should be recorded, whereas the statute provides that the order shall be that the whole be recorded; that is, the plat and certificate of acknowledgment. Strictly, perhaps, the certificate of acknowledgment of a plat is not a part of the plat. But we think that the county judge used the word "plat" to denote the paper or document before him, with all the endorsements thereon. So far, then, it appears that nothing occurred of which the plaintiffs can properly complain.

We proceed, next, to consider an irregularity which occurred after the plat was filed. The statute made it the

3. ——:
death of proprietor between filing and recording: dedication not annulled by.

duty of the recorder to record the plat as speedily as possible. The plat was recorded, but not until after several years, and not until after W. A. Scott had died. Previous to the time it was recorded it appears to have been pasted into a plat book as a substitute for recording.

The plaintiffs' position is, that the title could pass from Scott only by the recording, and, as that was not done in his life-time, the subsequent recording could not have the effect to pass the title. The statute relied upon is in these words: "The acknowledgment and recording of such plat is equivalent to a deed in fee simple." Possibly a purchaser for value from W. A. Scott would not have been charged with constructive notice of the plat merely by reason of the filing of the same. But we have not such question before us. The

plaintiffs claim as heirs. As against them it appears to us that the plat, when recorded, should be deemed to have taken effect from the time of filing.. When W. A. Scott had filed the plat, he had done all that he could do. The plat then passed into the hands of an officer authorized by law to receive and record it. The case differs widely from that where a deed is executed but not delivered during the life of the grantor, because there can be no delivery, except as the act of the grantor, performed either by himself or his agent. The recording of a plat is not the act of the dedicator. It is an act of an officer of the law, performed after the dedicator's action has ceased. The principle involved is not unlike that involved in a case where a party litigant dies between the submission of a case and the rendition of the judgment or decree. The rendition may date from the time of submission, because the parties from that time have nothing more to do, and the time which elapsed between the submission and rendition, be it great or small, is not important. *Flock v. Wyatt*, 49 Iowa, 468. We do not say that the heirs of W. A. Scott could not have withdrawn the plat before it was recorded, and have withheld it from the record. Possibly they might have done so, but, as they did not do so, the authority to record, acquired by the officer at the time the plat was filed, remained. If this is not so, then the recorder, in all cases where the person who has made and filed the plat dies before it is recorded, should refuse to record it. But the statute makes his duty unqualified and imperative. We cannot think that we should be justified in holding that whoever relies upon the validity of a statutory dedication must take notice at his peril as to whether the dedicator survived the time of the official act of recording his plat.

It is proper in this connection that we should observe that there was evidence showing that, between the time the plat was filed and the time it was recorded, it was taken from the recorder's office. The plaintiffs rely upon this fact as a revocation of the recorder's authority to record the plat. But, in the

absence of evidence to the contrary, we could only presume that the plat was removed for a mere temporary purpose by permission of the recorder, and was in the meantime held for him, as the person charged by law with the custody of the plat during the time it remained unrecorded.

But it is said that the words "Market Square," by which the land in question was designated upon the plat, are not sufficient to show a dedicatory intent. In support of this view, our attention is called to the *City of Pella v. Scholte*, 24 Iowa, 283. In that case it was held that the words "Garden Square" did not necessarily show a dedication to the public, and that, taken in connection with the evidence of the circumstances, they did not show such dedication. But in the case at bar, the circumstances in evidence tended to show a dedication. The city always treated the land in question as public by omitting to tax it. The dedicator must have known this fact. In addition, we may say that he never treated the land as private, nor did any act inconsistent with the theory that he had made a dedication of the land. We have no doubt that such, in fact, was his intention. But it is said that, if it was ever dedicated at all, it was dedicated for the purpose of a market, and that the city never accepted it for that purpose, but allowed it to be devoted to another.

*4. ——: dedication of "Market Square": presumption from use of name: extraneous evidence of intention.*

The words "Market Square," as applied to the ground, do not of themselves necessarily indicate more than that such is the name given to the ground. It may have been named from a street running near it, called Market Street, or it may have been thought that its location was such that market, or other commercial business, would gather about it. We do not think that we should be justified in going so far as to hold that the dedication was understood as being made upon the condition that a market building should be erected upon the ground. Looking at the plat alone, we could not say that the dedication was other than for general public purposes, and, when we

*5. CITY OF DES MOINES: "market square:" property of the city.*

take the same in connection with the evidence introduced, we feel reasonably clear that such was the intention. We think that the plaintiffs' petition was properly dismissed, and that the judgment must be

AFFIRMED.