## CASEY v. TAMA COUNTY.

| 75 | 655 |
| 104 | 391 |

1. **Bridges:** WHAT IS COUNTY BRIDGE: TWO BRIDGES CONNECTED BY GRADE: QUESTION FOR JURY. The defendant county built a bridge fifty feet long, resting on stone abutments, over a stream, and another bridge thirty-six feet long, also resting on stone abutments, over an arm or bayou of the same stream. These bridges were a part of the same public highway, and were only twenty feet apart, and the intervening portion of the highway was graded up to the common level of the bridges. In an action for injuries occasioned by a defect in the shorter bridge, *held* that it was error for the court to hold, as matter of law, that the shorter bridge was not a county bridge because it was not forty feet in length (Code, sec. 527); but that it was a question for the jury whether the two bridges did not in fact constitute, with the intervening grade, one structure, for negligence in regard to which the county would be liable.

2. ——: ——: LIMIT OF FORTY FEET. Viewed in the light of the settled policy of the state, and of the public interest, and of other provisions of the statute (Code, secs. 303, 990, 994), the proper meaning of section 527 of the Code is that it fixes absolutely the liability of counties for public bridges, over streams crossing state and county highways, which exceed forty feet in length, and that their liability for constructing and maintaining bridges forty feet or less in length is not affected by said section, but depends upon the necessity and importance to the public of each bridge, its character and cost, and the financial ability of the road-district in which it is situated to construct and maintain it.

Casey v. Tama County.

3. ———— : ———— : WHETHER ON PUBLIC HIGHWAY : QUESTION FOR JURY. In an action for an injury by reason of a defective bridge, there was evidence tending to show that the highway on which the bridge was located, including the crossing at the bridge, had been used by the public, and worked by the road supervisor, and improved by the defendant county, for more than twenty years. *Held* that it was error for the court to determine, as matter of law, that the bridge was not located on a public highway, but that the question should have been submitted to the jury.

4. ———— : ———— : LOCATION OUTSIDE OF COUNTY : QUESTION FOR JURY. Under chapter 40, Laws of 1878, a county may have a bridge outside of its own limits, for whose maintenance it may be liable. And where the evidence established acts of the defendant tending to show its recognition of its liability for the maintenance of the bridge in question, though just outside of its own limits, the question of its liability should have been submitted to the jury.

*Appeal from Benton District Court.*—HON. JAMES D. GIFFEN, Judge.

FILED, MARCH 10, 1888.

ACTION to recover damages for personal injuries caused by an alleged defective bridge on a public highway. After both parties had introduced their evidence, the district court sustained a motion to instruct the jury to return a verdict for defendant. A verdict was returned in accordance with this ruling, a motion for a new trial was overruled, and judgment rendered against plaintiff for costs. The plaintiff appeals.

*Struble & Stiger* and *J. D. Nichols*, for appellant.

*Chas. A. Clark* and *J. R. Caldwell*, for appellee.

ROBINSON, J.—I. The first question raised for our consideration is the liability of a county for a structure

1. BRIDGES: what is county bridge: two bridges connected by grade: question for jury.

of the length and character of that in controversy. The evidence tends to show that it was built by defendant in 1874 over an arm or bayou of Big creek. It rested on stone abutments, and was not less than thirty-six, nor more than forty, feet in length. Some twenty feet south of this, and in the same line of road,

Casey v. Tama County.

was the north end of a bridge-span over the main stream. This was fifty feet long, and also rested on stone abutments. The span between the two spans was filled up to their level with stones and earth to a height, in places, of eight or ten feet. The two spans and connecting grade formed a means of crossing Big creek on the line of the road used as a public highway. The evidence tends to show that defendant built the structure over the main stream about the year 1870, and replaced it with another in 1883; that it built the structure over the bayou in 1874, and in 1879 placed piling under each end of the span; that defendant has at all times since 1870 assumed the duty of maintaining these structures. The cost of the longer one was about nine hundred dollars, and of the other about five hundred dollars. On or about July 1, 1884, the plaintiff, in crossing the stream with a team of horses and loaded wagon, drove onto the shorter span. It gave way, and plaintiff was precipitated to the water below, with his load and portions of the structure, resulting, as he alleges, in serious injuries to himself. One of the grounds of the motion to instruct the jury to return a verdict for the defendant is as follows: "The evidence shows, without controversy, that the bridge in question was less than forty feet in length, and was not a county bridge." The motion was sustained as to this, as well as to all other grounds. It is contended by plaintiff that the structure which fell, if not constituting a county bridge of itself, was at least a part of such a bridge, and hence that the district court erred in sustaining the motion on the ground named. The court below must have found that, as a matter of law, no bridge not exceeding forty feet in length can be a county bridge, and that the structure in question was neither a county bridge nor any part of one. In this we think there was error. We have held that a so-called approach might properly be considered a part of the bridge to the proper use of which it was essential. *Moreland v. Mitchell County*, 40 Iowa, 397; *Albee v. Floyd County*, 46 Iowa, 178. In

this case it appears that the span over the bayou was on substantially the same level as that over the main stream ; that it was necessary to allow a free and proper flow in time of high water; that it was made much like the main span ; that each was designed for use in connection with the other ; and that neither could have been used without the other. They were joined together as a continuous whole, and, as such, formed a single passage-way over the stream. We do not think it can be said, as a conclusion of law, that their separation by a few feet of earth made them independent of each other ; on the contrary, the jury might have found that all together formed but a single bridge. This was a question of fact, and not of law, and should have been submitted to the jury for their determination.

II. But in case the jury should find that the structure in controversy was complete in itself, and not more than forty feet in length, could it be

2. ——: ——:
limit of forty considered a county bridge in that event,
feet.
under the facts which the evidence tends to prove? Defendant contends that this question must be answered in the negative, and relies upon section 527 of the Code in support of its position. The portion of that section material to the present inquiry is as follows: "The city council shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city, and shall cause the same to be kept open and in repair, and free from nuisances. All public bridges exceeding forty feet in length, over any stream crossing a state or county highway, shall be constructed and kept in repair by the county." Then follows a clause permitting the city council to appropriate money to aid in the construction of county bridges within the limits of the city, and in certain other cases. It is the contention of plaintiff that the provision quoted applies only to bridges within the limits of incorporated cities, and that county bridges without such limits may be less than forty feet in length. It is not claimed that the structure in question

is within the limits of any city. It is true that section
527 is found in that part of the Code which relates
specially to cities; but the Code should be treated as
an entirety, and its . various provisions construed
together. *Hunt v. Farmers' Ins. Co.*, 67 Iowa, 742.
There is no limitation on the natural effect of the lan-
guage used. It applies to "all public bridges  *  *  *
over any stream crossing any state or county highway."
*Roby v. Appanoose County*, 63. Iowa, 113. It seems
designed to fix the liability of counties for all public
bridges exceeding forty feet in length, on the highways
named, but it does not seem to us to have any applica-
tion to bridges not exceeding that length. As to such
bridges, the law remains unchanged from what it was
prior to the enactment of chapter 179, Acts Thirteenth
General Assembly. *Roby v. Appanoose County,
supra*, is not in conflict with this view. Section 303 of
the Code requires the board of supervisors of each
county "to provide for the erection of all bridges which
may be necessary, and which the public convenience
may require, within their respective counties, and to
keep the same in repair." Section 990 of the Code is
as follows : " When notified in writing that any bridge,
or any portion of the public highway, is unsafe, the
supervisor shall be liable for all damages resulting from
the unsafe or impassable condition of the highway or
bridge, after allowing a reasonable time for repairing
the same ; and if there is, in the district, any bridge
erected or maintained by the county, then and in that
event he shall, on such notice of the unsafe condition of
such bridge, as soon as he reasonably can, obstruct
passage on such bridge, and use strict diligence in noti-
fying at least one member of the board of supervisors of
his county in writing of the unsafe condition of such
bridge ; and, if he fails so to obstruct and notify, he
shall be liable for all damages growing out of the unsafe
condition of such bridge, occurring between the time he
is so notified and such time as he neglects in obstruct-
ing such passage ;  *  *  *  provided that nothing
herein contained shall be construed to relieve the county

from liability for the defects of such bridge." This section requires the road supervisor to put in proper condition, after notification, all bridges which he is required to build and repair, and to obstruct the passage over other public bridges, and notify the proper officer of their condition. But what bridges is the road supervisor required to build? Manifestly, only such as can be built from the limited amount of funds at his disposal. Code, sec. 994. It is the settled law of this state that county bridges are such as require for their erection an extraordinary expenditure of money, "such bridges as cannot be constructed with the limited means under the control of the respective road-districts of the county, or such as have been constructed by the county." *Chandler v. Fremont County*, 42 Iowa, 58, and cases therein cited. The structure in question was not less than thirty-six feet in length, and rested on stone abutments. It was not only built by the county, but its cost was such that it could not have been constructed from the amount of funds within the control of the supervisor of the ordinary road-district. If, therefore, the county is not liable for the building and repairing of bridges of this class, no responsibility for them is vested in any public officer or corporation. We cannot think that such was the intent of the general assembly. It is contrary to the policy of the state, and against public interest. We think the better construction of the provision of law in question is that it fixes absolutely the liability of counties for public bridges, over streams crossing state and county highways, which exceed forty feet in length, and that liability for constructing and maintaining bridges forty feet or less in length is not affected by this provision, but depends upon the necessity and importance to the public of each bridge, its character and cost, and the financial ability of the road-district in which it is located to construct and maintain it.

III. It appears from the evidence that the bridge in question was not located within the territorial limits

Casey v. Tama County.

3. ——: ——: whether on public high-way: question for jury.

of defendant, but was built a short distance from the county line, and wholly within Benton county. The evidence tends to show that this was done to secure a better bridge-site, and one which would require a shorter bridge than would be necessary on the county line. The traveled road in which the bridge was built was on the county line, both north and south of the bridge, and left it only at the crossing of the stream. Evidence was offered tending to show attempts on the part of the proper officials of Tama and Benton counties to establish a highway along the county line at the crossing of the stream, and for some distance north and south of it; but it may be conceded, for the purposes of this case, that such establishment was not shown to have been officially made. The evidence tends to show that this road, including the crossing at the bridge, had been used by the public, and worked by the road supervisors, and improved by defendant, as a public highway for twenty years. During most of that time the land at the bridge, and on each side of it, had been fenced, leaving for a highway the road as traveled by the public, and improved by public officials. It is contended by defendant that it is not liable in this action, for the reason that the bridge was not on a public highway. But a highway may be established by the dedication of land for that purpose by the owner, and its acceptance by the public. *State v. Kansas City, St. J. & C. B. Ry. Co.*, 45 Iowa, 142; *Onstott v. Murray*, 22 Iowa, 469; *Wilson v. Sexon*, 27 Iowa, 16; *Manderschid v. City of Dubuque*, 29 Iowa, 78; *Quinton v. Burton*, 61 Iowa, 473. It was proper for the jury to determine, from the evidence adduced, whether or not the road in question was a public highway.

IV. The last point we need to consider is the claim of appellee that it had no authority to construct or repair

4. ——: ——: location out-side of county: question for jury.

the bridge because it was wholly within Benton county. Chapter 40, Acts Seventeenth General Assembly, authorizes the construction of county bridges on county-line

roads, wholly within one of the two counties interested, where a suitable site cannot be obtained on the county line. Defendant rebuilt the span over the main stream, and put piling under the other, after this law went into effect. Under the facts which the evidence tends to establish, we do not think defendant can escape liability because of the location of the structure within Benton county.

REVERSED.