HENRY SHERMAN, Appellant, v. HENRY HASTINGS, Road Supervisor, Appellee.

**Highway**: BOUNDARIES : ESTOPPEL. The plaintiff caused a highway to be located across lands owned by him, sold a lot on one side thereof, and afterwards built a fence along said road on the side of the land retained by him, and his grantee built a fence on his side. The space between these two fences was worked and traveled by the public for twenty-five years, and after twenty years the plaintiff rebuilt his fence on the same line. *Held*, that the boundaries of such highway had been established by the acts of the plaintiff, and of the public, and by lapse of time, and that plaintiff was estopped from claiming any portion of said road as his own.

*Appeal from Allamakee District Court.*—HON. L. O. HATCH, Judge.

SATURDAY, OCTOBER 25, 1890.

ACTION to enjoin the removal of a fence constructed by plaintiff. The defendant claims the right to remove it on the ground that it is in a public highway. There was a trial on the merits; and a judgment in favor of defendant. The plaintiff appeals.

*D. W. Reed* and *J. H. Trewin*, for appellant.

*Hendrick & Deremore*, for appellee.

ROBINSON, J.—Prior to the year 1861, plaintiff was the owner of all of the southeast quarter of the southeast quarter of section three, in township ninety-seven, north, of range five west. About the year 1862, he sold, to Otis Peck, a triangular lot in the southeast corner of said tract, containing about two and one-half acres. Peck sold the lot to Fredrick Schafer, and caused plaintiff to convey it to Schafer in October, 1865. The deed of conveyance describes the lot as follows : " Commencing at the southeast corner of section three, in township ninety-seven north, of range five west, running

thence north thirty-five rods, thence westerly twenty-six rods to the center of the road, thence southeasterly along said road thirty rods to the place of beginning, supposed to contain two acres and one hundred and two rods." Schafer sold the lot to Herman Sherman, who now owns it. Before the lot was sold to Peck, plaintiff had caused a highway to be located on or substantially parallel to the line which was afterwards made the southwest boundary of the lot, and had built a fence along the southwest side of the road opposite the lot. After the sale to Peck, plaintiff built a fence north of the lot on the northeast side of the road, and Peck built a fence on the same line produced, on or parallel to the southwest side of the lot. The space in front of the lot, between the fences so constructed on opposite sides of the road, was about fifty feet wide. It was covered with brush and timber where the road was located, and a track was grubbed and broken through it. The fence built by plaintiff on the southwest side of the road remained until about the year 1885, when it was replaced by another built on the same line. About that time a controversy seems to have arisen between the plaintiff and his brother Herman in regard to the true location of the highway, the plaintiff claiming that its center was on the southwest boundary line of the lot, and that his fence was not on the true southwest boundary line of the road. During the latter part of the year 1887, plaintiff built a staked and ridered rail fence parallel to his old fence, but nearer the fence of Herman Sherman, and in what defendant claims to be the highway. It is that fence which plaintiff seeks to enjoin defendant from removing.

The questions presented require us to determine the true location of the highway. While plaintiff admits that for nearly, if not quite, thirty years he maintained a fence on a line southwest of that occupied by the fence in controversy, yet he claims that he did not build it on the line of the highway, but along the edge of the prairie where he could get through the quickest, and that he had no intention to waive his right to claim to

the true line, which was about twenty feet northeast of, and parallel to, the line of his first fence. There is much conflict in the evidence, but the material facts of the case, in addition to those already stated, appear to be, substantially, as follows: When the lot was sold to Peck it was verbally agreed between him and plaintiff that a part of the lot, two rods wide along its southwest side, should be used for the road. The northwest boundary is made by the deed to terminate on the west, in the center of the road, and the southwest boundary is made to extend along the road. At the time the deed was executed the road was traveled and fenced on both sides, as already stated, and we are satisfied that it was recognized and treated by all parties in interest as being located as traveled and fenced, and that the southwest boundary line of the lot was along the center of the space between the two fences. The plaintiff claims that the fence built by Peck was on his lot, two rods from the center of the road, and that his brother has moved it out about two rods. The testimony as to the alleged relocation of that fence is very conflicting, but we are of the opinion that plaintiff has failed to establish his claim in regard to it. The fence built by Peck has been rebuilt, but on the same line, excepting for a distance of three or four rods at the north end where it was moved out five or six feet to make it on a line with plaintiff's fence, north of the lot. Plaintiff states that Peck's fence was built on the northeast boundary line of the road. It follows that his old fence, which was but about fifty feet from the fence built by Peck, could not have been southwest of the southwest boundary line of the road, and that his present claim as to the true line is not well founded. The plat and field-notes of the survey, made when the road was established, were introduced in evidence, but the notes are shown to be defective, and both parties claim support from them. The fact that the road on the line, as claimed by defendant, was worked and traveled by the public for twenty-five years, without objection on the part of plaintiff, and the further fact that he built and so maintained his fences as

to indicate an intention on his part not to claim any of the land so used, as against the public, raise a strong presumption in favor of the claim of defendant, which the evidence has wholly failed to overcome.   Even had no steps been taken to establish a highway on the line in question, in the manner provided by law, we should be fully justified in finding that it had been established by the acts of plaintiff, and of the public, and the lapse of time.   *Onstott v. Murray*, 22 Iowa, 457 ; *Quinton v. Burton*, 61 Iowa, 471 ; *State v. Birmingham*, 74 Iowa, 407 ; *State v. Waterman*, 79 Iowa, 360.   The judgment of the district court appears to us to be correct.   It is, therefore, AFFIRMED.