THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. THE CITY OF COUNCIL BLUFFS, et al., Appellants.

**Title to Street:** RIGHT OF WAY: *Dedication and deed.* The owner of land agreed to give a projected railroad a right of way across it, and before the road was laid, platted the land, showing streets and the right of way. The lines of right of way as shown by the plat are continuous and, at the point where the right of way lines cross the street lines on said plat, there is no break to indicate the crossing by an open street or alley. Thereafter, the owner executed to the company deeds which conveyed lands reserved for depot grounds, and described them by metes and bounds, and then described the right of way as a strip of land running through the platted land and through and across the streets. The railroad company planked the street crossing in controversy, and it was so used for many years; and when other streets were opened they too were planked by the company, and have been used ever since. *Held,* that the filing of the plat did not amount to a conveyance of a right of way to the company, that while such platting might have been strong evidence that no streets and alleys were reserved did plaintiff rely for title upon dedication by such plat, the company's title rested, instead on the deed, and that it reserved the street crossing shown in the plat, which at least constituted a common-law dedication of the streets across the right of way.

NON-USER BY MUNICIPALITY: *Defeat of right to reopen.* Where a railroad recognized and adopted a dedication of streets which crossed its right of way as shown by a plat, and planked the crossing and maintained it for years, mere non-user by the public will not defeat the city's right to open and replank the crossing after the company has wrongfully destroyed it.

STATUTE OF LIMITATIONS. The statute of limitations will not run to defeat the right of a city, in the exercise of its governmental powers, to open and use a disused crossing over a railroad right of way.

Vacation Ordinance: VALIDITY: *Estoppel*. The passage by the city council of an ordinance vacating a street crossing over a railroad, which was not signed by the mayor, and was therefore ineffective, and which was thereafter reconsidered and "laid on the table," does not, after the lapse of several years, during which the crossing was not used, estop the city to reopen the crossing.

SIGNATURE BY MAYOR. Failure of the mayor of a city to sign an ordinance passed by the council, as required by Acts Twentieth General Assembly, chapter 192, renders it of no effect.

*Appeal from Pottawattamie District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, OCTOBER 20, 1899.

SUIT in equity to enjoin the opening of what is known as "Seventh street," in the city of Council Bluffs, over and across plaintiff's right of way. There was a hearing on the merits, resulting in a decree for plaintiff, and defendants appeal.—*Reversed.*

*S. B. Wadsworth* for appellants.

*Carroll Wright* and *Wright & Baldwin* for appellee...

DEEMER, J.—In the year 1857 what is known as "Riddle's Subdivision in the city of Council Bluffs" was duly platted by one John T. Baldwin, who was the owner, or trustee for the owners, of the land covered thereby. A copy of this plat is necessary to a full understanding of the questions presented, and it is here produced from a photographic copy:

What is there designated as Center street is now Sixth. Marcy is now Seventh; Baldwin, Eighth; and Chestnut, Ninth.   Thirteenth avenue is the street running east and west just south of the land designated on the plat as Depot Grounds, and Fourteenth avenue is the next east and west street immediately south of Thirteenth avenue.   The streets are now numbered numerically from east to west, and the avenues from north to south, commencing with Ninth, which

is designated on the plat as Oak street.   The railroad using the right of way and depot grounds did not come to Council Bluffs until the year 1868, although it was projected some time before the plat was made, and certain citizens, among whom was Baldwin, had agreed to furnish it depot grounds.   Before laying its tracks the railway company obtained deeds to the depot grounds and right of way from Baldwin and others, who were then the owners of the land covered by the plat, which deeds contained the following description of the premises conveyed:  "To-wit, a parcel of land in Riddle's subdivision in Council Bluffs, Pottawattamie county, Iowa, situated in east half of southeast quarter, section 35, or in southwest quarter of sections 36, 75, 44, one thousand and nine hundred and ninety-eight feet long from east to west, by three hundred and fifty feet wide from north to south, and bounded as follows, to-wit: On the north by center of Durant street, on the east by the center of Chestnut street, on the south by the center of Commercial street, on the west by lots E and F, and the west boundary line of said subdivision as platted and now recorded; also, a strip of land through said sub-division known and platted as the right of way of the Mississippi & Missouri R. W. Co., and running through the above-described parcel of land, and through blocks 45, 51, 52, 53, 57, 58, 74, and 75, and through and across Chestnut, Baldwin, Marcy, Center, Main, Commercial, Walnut, and Locust streets, in said sub-division, as now platted and of record— and all in Pottawattamie county, state of Iowa; being (said last-described strip or right of way) 100 feet in width, being fifty feet on either side of the center line of the road of said company as located, or to be located, by the engineer of said R. R. Co. for the construction of said R. R. from Kellogg, in Jasper county, to such point as may be hereafter designated."   What are known as Sixth and Eighth streets have been opened and used for travel over and across plain-

tiff's right of way for many years, but the original crossing was at Seventh street.   About the time the tracks were laid the railway company put in a plank crossing at the intersection of this street with its right of way, which was maintained and used until about the year 1885, at which time it moved its freight depot to a point near to and adjoining Seventh street, where it crosses the right of way.   At or about the time of the location of the depot the planks which made the crossing at Seventh street were torn up, and a ditch was dug along the right of way so as to turn the water from Sixth street in a westerly direction along the track. Whether or not this ditch crossed Seventh street is a matter about which the witnesses do not agree, and we do not find it necessary to determine the dispute.   In the year 1891 the defendants were again threatening to open and grade Seventh street where it crosses the right of way, and plaintiffs procured a temporary writ of injunction restraining them from so doing. The action in which the injunction was obtained was thereafter dismissed by plaintiff at its costs.   In the year 1894 the city council of Council Bluffs passed an ordinance vacating Seventh street between Thirteenth and Fourteenth avenues, but this ordinance was never signed by the mayor, and was thereafter reconsidered by the council and "laid on the table."

At the time this suit was commenced the defendants were again threatening to open up Seventh street over and across plaintiff's right of way.   Plaintiff claims that it owns the right of way shown on the plat, in virtue of the deeds from Baldwin and others, and that none of the streets shown on the plat cross the same.   It also insists that, if the public ever had any right to a crossing at Seventh street, it has lost it by abandonment and by adverse possession, and it contends that the vacation ordinance to which we have referred operated as an extinguishment of the rights of the public.   It will be noticed that the lines of the right of way, as shown by the plat, are continuous; that is, there

is no break in them at any place to indicate that any of the streets or alleys cross the right of way. This fact plaintiff regards as conclusive evidence of its title to the right of way unincumbered by any street crossings. If plaintiff obtained its title by dedication, through or in virtue of the plat, much might be said in favor of its contention, and perhaps it would be entitled to the relief demanded. But it did not and could not do so. The filing of the plat did not amount to a conveyance of the right of way to the railroad company. Its title is based on the conveyance from Baldwin and others, the material parts of which we have heretofore set out. In this conveyance the parcel of land known as "Depot Grounds" is described in entirely different language from that made use of in describing the right of way. The right of way is described as running through certain blocks, and through and across certain streets (naming them), among which was the one in dispute, while the depot grounds are described by metes and bounds. It is evident from the description contained in the deed that no street crossings were intended to be reserved over, through, or across the depot grounds, and it is equally plain from this description that all the streets shown on the plat were intended to cross the right of way. That plaintiff so understood is evidenced by the fact that about the time it laid its rails along the right of way it provided a crossing at Seventh street, which it maintained for more than ten years without interruption. The plat was made long before the railway was located, and plaintiff took its right of way subject to all existing easements reserved in its deed, and to all existing ways in favor of the public. As the street crossings were recognized in the grant, and as plaintiff treated the one in dispute as a public highway for more than ten years, it is in no position to say that the public has no right thereto, unless it be for some of the other defenses pleaded, to which we will hereafter call attention. As sustaining our conclusions, see *Scott v. City of*

*Des Moines,* 64 Iowa, 438; *Shea v. City of Ottumwa,* 67 Iowa, 39; *Sherman v. Hastings,* 81 Iowa, 372; *Hempsted v. Huffman,* 84 Iowa, 398; 3 Elliott Railroads, section 947. It must be remembered that plaintiff is asking affirmative relief against the city, and that it must recover on the strength of its own title, and not on the weakness of its adversary's. If it be true that the filing of the plat did not amount to a dedication of the streets across the right of way, plaintiff is in no position to take advantage of the defect, for the reason that its deed expressly recognizes the crossings. Although the plat may not have amounted to a statutory dedication, there is such evidence of a common-law dedication as to preclude the plaintiff from claiming that the street in question does not cross its right of way.

II. There was no such conduct on the part of the city as will sustain the claim that it has abandoned the street crossing. As we have seen, the crossing was used for more than ten years after the railway track was laid. The planks were not torn up until 1885. In the year 1891 the city was again asserting its right to improve, and the evidence also shows that in the year 1894 one of the agents of plaintiff consulted with one of the aldermen of the city regarding an amendment to the vacation ordinance so that the city might require the erection of a viaduct over the railroad at Seventh street, under the provisions of chapter 32 of the Acts of the Twenty-second General Assembly; and the agent consented to such amendment, which was formally adopted. Having recognized and adopted the dedication made by the original proprietor, mere non-use would not defeat the city's right to open and replank the crossing after plaintiff had wrongfully destroyed it. *Lathrop v. Railroad Co.,* 69 Iowa, 105; *Barlow v. Railroad Co.,* 29 Iowa, 276; *Taraldson v. Town of Lime Springs,* 92 Iowa, 187. Again there has been no such adverse possession on the part of plaintiff as will give it title to the disputed crossing. We have seen that its use has been in-

terrupted. All that the railroad company did was to tear out the plank and dig a ditch along its right of way through and across that part of Seventh street which was in the right of way. It seems to be pretty well settled that the statute of limitations will not run to defeat a city in the exercise of its governmental authority. *City of Waterloo v. Union Mill Co.* 72 Iowa, 437; *Taraldson v. Town of Lime Springs, supra.* There may be cases where a city will be estopped from opening a street or alley, but this is not one of them. All that plaintiff did, as shown by this record, after it attempted to destroy the crossing, was to dig the ditch to which we have referred. Its depot was located with reference to the true lines of Seventh street, and there is nothing to justify the claim of estoppel, even if it had been pleaded.

III. The vacation ordinance on which plaintiff relies was not signed by the mayor of defendant city, as required by chapter 192, Acts Twentieth General Assembly, and was for that reason alone invalid. Aside from this, the ordinance was reconsidered at a subsequent meeting of the city council, and the matter was laid on the table. True, the rules of order adopted by the city council require a motion to be made at the same meeting at which the vote sought to be reconsidered was had. But the record discloses that such a motion was made and adopted at an adjourned meeting from the one at which the ordinance was passed.

Our conclusion is that the trial court was in error in granting the relief asked, and that the plaintiff's petition should be dismissed.—REVERSED.