CRESTON WATERWORKS COMPANY, Appellee, v. THOMAS McGRATH, Appellant.

**Eminent Domain:** CONSTRUCTION OF WATERWORKS: NECESSITY FOR TAKING PROPERTY. Section 474 of the Code, granting power to cities to condemn so much private property as may be "necessary for the construction and operation" of waterworks, does not authorize the taking of private property on which to lay a railroad track for the purpose of conveying the materials used in the construction of said waterworks, and the coal used in their operation, from the railroad station in a town to a point a mile and three quarters distant, where the waterworks are to be constructed, at least where it appears that a public road, much used for travel, though somewhat hilly, and at times impassable on account of mud, leads from the railroad station to said waterworks. Neither can such power be exercised, however necessary, to enable a waterworks company to ship ice cut on its reservoir.

*Appeal from Creston Superior Court.*—HON. S. R. DAVIS, Judge.

WEDNESDAY, OCTOBER 18, 1893.

THE plaintiff is a corporation organized for the purpose of supplying water to the inhabitants of the city of Creston. It seeks by this proceeding to condemn a strip of land thirty feet wide through the defendant's farm, upon which it proposes to maintain a railroad track from the Chicago, Burlington & Quincy Railroad to its waterworks plant, which is situated about three quarters of a mile from the main line of the railroad. The works consist of a dam in a stream, a pumping house and appurtenances, and the pipes which convey the water from the works into the city. The defendant contends that the plaintiff has no lawful power to exercise the right of eminent domain by condemning any part of this land for a railroad track or switch. The superior court first determined the question

of the right to exercise the power, and held that such right existed. From that decision the defendant appeals.—*Reversed.*

*Thos. L. Maxwell* and *Haley & O'Donnell*, for appellant.

*D. A. Porter* and *Sullivan & Sullivan*, for appellee.

ROTHROCK, J.—I. The right by which the plaintiff claims that it has authority to condemn the land is founded upon certain provisions of the Code of this state. They are as follows: After providing that cities shall have power to erect waterworks, or to grant the right to do so to private individuals or incorporated companies, they are also authorized to construct, or authorize the construction of, such works without the city limits, "and for the purpose of maintaining and protecting the same from injury, and the water from pollution, their jurisdiction shall extend over the territory occupied by such works, and all reservoirs, streams, trenches, pipes and drains used in and necessary for the construction, maintenance, and operation of the same, and over the stream or source from which the water is taken for five miles above the point from which it is taken; and to enact all ordinances and regulations necessary to carry the power herein conferred, into effect." Code, section 472. Section 474 is in this language: "Said cities or towns are hereby authorized to condemn and appropriate so much private property as shall be necessary for the construction and operation of said waterworks; and when they shall authorize the construction and operation thereof by individuals or corporations, they may confer by ordinance upon such person or corporation, the said power to take and appropriate private property for said purpose."

It will be observed that the power granted is to condemn so much private property "as shall be neces-

sary for the construction and operation of said water-works.'' It is contended that a railroad track across the defendant's farm is necessary for the construction and operation of the works. The defendant insists that there is no such necessity, and the court below, after the introduction of evidence by both parties, determined that a railroad track was necessary.

It appears from the evidence that the railroad station at Creston is about one and three fourths miles from the reservoir, power house, pumps and other appliances by which water is forced through the pipes into the city, and that in building the works a large amount of material was used, which was received by railroad. There is a public road, which is much used for travel, which leads from the railroad station to the waterworks. This road is somewhat hilly, but it is one of the principal thoroughfares leading into the city. The plaintiff and its counsel appear to be of opinion that the word ''construction,'' as used in the statute, has reference to the moving of the material necessary to erect the buildings. We think it means much more than that. Surely it was never intended that the power of eminent domain by which private property is taken for public use, not for the mere temporary purpose of the transportation of material for a building, but for all time, should apply to a case like this. But, suppose such a purpose was intended. The evidence shows that the construction of the waterworks was commenced in the month of April, 1891, and completed July 20, in the same year. The plant was completed before the issue was made up in this proceeding. The company did not await the action of the court to give it authority to lay the railroad track over the defendant's land. It was built in April, 1891, and used to ship the building material until the works were completed. So that now all the necessity there is for a railroad track is to ship coal for fuel to operate the works, and such

other supplies as may be necessary. There is no evidence authorizing a finding that any necessity exists to condemn land for that purpose. It would be a convenience to the plaintiff to do so, but it is not a question of convenience.

We can not accept the extravagant claims of some of the witnesses as to the necessity for this means of transporting fuel to the works. The manager of the plaintiff company testified that at the time of the trial the works consumed about two and one half wagon loads a day. It is true he testified that they were not then running with full force; but, making a liberal allowance for that condition, we think it would be absolutely in the face of the facts to hold that there is any such necessity as the law requires to confer the power to condemn the defendant's land. The claim made that the road is at times impassable by reason of mud, so that coal can not be hauled, is no reason for holding that the railroad track is a necessity. We see no reason why the plaintiff can not take advantage of the weather and good roads, the same as others, to provide against the contingency named. There is no evidence of a necessity for condemning this land for the purpose of the waterworks. It is true that it appears in evidence that the plaintiff cuts large quantities of ice on its reservoir, and ships it over this spur track. One of the witnesses testified that as many as eighty cars were loaded and shipped in a day. Much of this ice was shipped to points other than the city of Creston. It is scarcely necessary to say, that the statute above cited gives no authority to condemn land for the purpose of laying railroad tracks for the benefit of persons engaged in the ice business.

It is not necessary to cite authority in support of the conclusions which we have reached in this case. The question as to when the right of eminent domain may be exercised, that is, when there is a public necessity

to exercise the right, is a question for the legislature, within proper restrictions. It is not for this court to determine in this case that the legislature might in its wisdom authorize the condemnation of private property upon which to construct a railroad track to waterworks. No such question is in the case. It is a question, however, whether private property may be condemned for a railroad track because it is a necessity for the operation of the waterworks. We hold that under the evidence no such necessity is shown to exist. It is everywhere held that statutes delegating the right of eminent domain are in derogation of common rights, and are not to be extended by implication, but are to be strictly construed. See an exhaustive article on this subject in 6 American and English Encyclopedia of Law, 509.

II. After it was determined that the plaintiff had the right to condemn the land, a jury was impaneled, and a trial was had, in which it was found that the defendant was entitled to damages for the right of way in the sum of eight hundred and fifty dollars. The plaintiff appealed from the assessment of damages. It is unnecessary to consider his appeal, as we hold that there was no right to condemn his land.

The judgment of the superior court is REVERSED.