HENRY BENNETT and ELLA BENNETT, Appellants, v. THE CITY OF MARION.

**Eminent Domain.** The determination of the city council as to the amount of land necessary to be taken for a proposed sewer outlet is not final but subject to review by the courts.

SAME. The decision of a city council as to the amount of land necessary to be taken for a proposed sewer outlet will not be interfered with on appeal if the land sought to be taken will to some extent conduce to the public use, but any abuse of power will be restrained.

SAME. A city, while allowed to determine for itself whether a sewer outlet shall be constructed in a certain locality, should not be permitted to fix arbitrarily on *ex parte* consideration the amount of land to be taken therefor but the land owner shall be allowed to

controvert allegations of the application by answer or other pleadings.

DAMAGES.    The jury in assessing damages for land condemned by the municipality for a sewer outlet may consider the effect upon the value of the remainder of the landowner's property or to what extent he will be inconvenienced in the use of it.

SAME.    The measure of damages for property condemned by a city for a sewer outlet is the difference between the fair market value of the whole tract immediately before the taking of the part condemned and the fair market value of the remainder immediately after the taking, less any advantage to the owner on account of the improvements.

INSTRUCTIONS.    An instruction not to allow damages for a possible misuse of land condemned for a sewer outlet, nor to assume that it will be made a nuisance, "or otherwise inconvenience plaintiff or lessen the value of his premises, except as hereinbefore explained," is too restrictive, where no explanation precedes

SAME.    An instruction that the material question in fixing the value of land condemned is its fair market value at the time of the appropriation, and another that the measure of damages is the difference between the market value of the whole tract immediately before taking and that of the remainder immediately afterwards, are erroneous, as conflicting.

Municipal Corporation: RESOLUTIONS.    A resolution of the council of a city of the second class having less than eight thousand inhabitants directing the mayor to institute proceedings to condemn property declared necessary for a sewer outlet need not be signed by the mayor, since by Acts Twentieth General Assembly, chapter 192, such requirement is limited to cities of the first class and those of the second class having over eight thousand inhabitants.

Evidence: JUDICIAL NOTICE.    The court will take judicial notice of the population of a city as determined by the last census.

*Appeal from Linn District Court.*—HON. WILLIAM G. THOMPSON, Judge.

THURSDAY, OCTOBER 27, 1898.

PROCEEDINGS to condemn a portion of the plaintiffs' farm for sewer purposes. The damages were fixed at three thousand two hundred dollars, and plaintiffs appeal.— *Reversed.*

*Rickel & Crocker* for appellants.

*Charles J. Haas* and *Jamison & Smyth* for appellees.

LADD, J.—The city council of Marion adopted a resolution on the fourteenth day of October, 1896, that about eighty-six acres of the plaintiffs' farm of one hundred and forty acres, adjoining the corporate limits, were necessary for a sewer outlet, and directed the mayor to institute proceedings necessary for condemnation. This resolution was not invalid because not signed by the mayor. The city, as appears by the last census, has a population of less than eight thousand inhabitants. This is a matter of which the courts will take judicial notice. *Kalbrien v. Leonard,* 34 Ind.. 497; *People v. Page,* 6 Utah, 353 (23 Pac. Rep. 761); *Mertz v. City of Brooklyn,* 128 N. Y. 617 (28 N. E. Rep. 253); *City of Savannah v. Dickey,* 33 Mo. App. 522; Bradner Evidence, 98. Chapter 192 of the Acts of the Twentieth General Assembly, requiring the mayor to sign resolutions, is limited in its operation to cities of the first class, and those of the second class having over eight thousand inhabitants. *Heins v. Lincoln,* 102 Iowa, 69, relied on by appellants, involved a resolution by the council of a city of the first class.

II. The necessity for condemning private property for a public use is not of judicial cognizance, but lies exclusively within the province of the legislature. The power to condemn may, as in this case, be delegated to municipalities or agencies, and when this is done they have the same powers as the state acting through any regularly constituted authority. *Hanson v. Vernon,* 27 Iowa, 33; *Bankhead v. Brown,* 25 Iowa, 544; *Barrett v. Kemp,* 91 Iowa, 296; *Smith v. Hall,* 103 Iowa, 95; *State v. Rapp,* 39 Minn. 65 (38 N. W. Rep. 926); *Aldridge v. Spears,* 101 Mo. 400 (14 S. W. Rep. 118); *Tait's Ex'r v. Asylum,* 84 Va. 271 (4 S. E. Rep. 697); *Lumbering Co. v. Urquhart,* 16 Or. 67 (19 Pac. Rep. 78); *In re Poughkeepsie Bridge Co.,* 108 N. Y. 483 (15 N. E. Rep. 601); *Boom Co. v. Patterson,* 98 U. S. 406; Lewis Eminent Domain, section 238; Cooley Constitutional Limitations, section 538; *Lynch v. Forbes,* 161 Mass. 302 (42 Am. St. Rep. 402, 37 N. E. Rep. 437); 6 Am. & Eng. Enc. Law, 517. See *Town of Cherokee v. Sioux City & I. F. Town Lot & Land Co.,* 52

Iowa, 279; *Dewey v. City of Des Moines,* 101 Iowa, 416. "Power to acquire real estate within and without their territorial limits, necessary for the purpose of outlets for their sewers," is given cities of the second class by chapter 8 of the Acts of Twenty-sixth General Assembly.  See Code, section 881.  A distinction is sought to be made between the necessity for some land, and fixing the amount of the area necessary.  The city may well be allowed to determine for itself whether a particular improvement shall be made (*e. g.* that a sewer outlet shall be constructed in a certain locality), but will it be permitted to say arbitrarily, and on *ex parte* consideration, the amount of land it will have for that purpose?  This question was made by written objection filed, and also by answer.  These objections and the answer were stricken, on motion of the city.  The Code makes no provision for raising jurisdictional issues in condemnation proceedings. Where the averments of the application to condemn are not traversed in any way, the court may well treat them as admitted, and proceed to assess the damages under the statute.  See *South Carolina Railroad Co. v. Blake,* 9 Rich. Law, 228.  But suppose the owner insists he has not refused to convey, or that he and the corporation have not failed to agree on the compensation, or that all or a portion of the land is not required or being appropriated for the public use; shall he not be permitted to raise these issues in some appropriate manner?  It is not so material how this is done, as it is that the landowner be permitted to have them presented to the court in some way and determined.  We discover no reason for denying him the right to controvert the allegations of the application by answer or other pleading.  While this is not authorized, by the statute, it is not prohibited, and is more definite and convenient than resort to oral objections.  *Rockwell v. Bowers,* 88 Iowa, 88.  See *Keokuk & N. W. Railway Co. v. Donnell,* 77 Iowa, 221; *Hartley v. Railway Co.,* 85 Iowa, 458; *O'Hare v. Railroad Co.,* 139 Ill. Sup. 151 (28 N. E. Rep. 924); *Corbin v. Railway Co.,* 66 Iowa, 269.

III. Is the determination of the city council of the amount of land necessary for use as a sewer outlet final, or may the question be reviewed by the courts? If the amount sought to be condemned is in excess of that necessary for the improvement, the appropriation of such excess is not for the public use. It will be noticed that the precise property, or the amount thereof, is not fixed by the legislature, but authority is conferred upon the city council to take for the public use only that real estate necessary therefor. If the use be not public, or the necessity does not exist, the owner ought not to be deprived of his property, notwithstanding compensation. With the policy or expediency of condemnation the courts have nothing to do. The necessity and the extent of the exercise of the power of eminent domain belong exclusively to the legislature,—the use being public,— provided such compensation is made, and the property sought to be taken will conduce to some extent to the accomplishment of the object to which it is devoted. Thus the mere public convenience will not justify the appropriation of property. *Memphis Freight Co. v. Mayor, etc., of Memphis,* 4 Cold. 425. *Prather v. Railroad Co.,* 52 Ind. 36: "Necessity is not made out by proof of great convenience, nor the enhancement of values, nor of the accumulation of property of the same kind for the same use." In other words, the appropriation may not be made for collateral purposes. *Spring Valley Waterworks v. San Mateo Waterworks,* 64 Cal. 133 (28 Pac. Rep. 447); *Jefferson v. Hazeur,* 7 La. Ann. 182; *Railroad Co. v. Davis,* 43 N. Y. 137. The city council had the power to finally determine the necessity of the improvement and its location, but its determination of the amount of land necessary therefor is subject to review by the courts. In many cases it may be difficult for the court to determine whether all the property sought by the corporation will be necessary, and it may be well to say that the opportunities of the latter to judge of its needs must be taken into consideration. The danger always to be guarded against is the abuse of power, in taking more from the citizen than is reasonably required for the

improvement contemplated.   The rule adopted in New York
is that the property sought to be acquired must be for the pur-
poses of the corporation, and reasonably necessary for the
use for which it is condemned. *In re New York Cent. & H. R.
Ry. Co.,* 77 N. Y. 248; *Railroad Co. v. Davis, supra.*   The
same rule obtains in other states.   *Tracy v. Railroad Co.,* 80
Ky. 266; *Spring Valley Waterworks v. San Mateo Water-
works, supra; Railroad Co. v. Wiltse,* 116 Ill. 454 (6 N. E.
Rep. 49); *O'Hare v. Railroad Co.,* 139 Ill. Sup. 151 (28
N. E. Rep. 925).   A large discretion is lodged with the city
council in fixing the amount of land necessary for the par-
ticular improvement, and its detemination should only be
interfered with to prevent the abuse of power.   If the land
sought to be taken will to some extent conduce to the public
use for which it is to be devoted, the decision of the munici-
pality that it is necessary therefor should not be interfered
with; otherwise it should be set aside.   As supporting these
views, see Lewis Eminent Domain, section 393; *O'Hare v.
Railroad Co.,* 139 Ill. 151 (28 N. E. Rep. 293); *In re St. Paul
& N. P. Ry. Co.,* 34 Minn. 227 (25 N. W. Rep. 345); *Wis-
consin Cent. R. Co. v. Cornell University,* 52 Wis. 537 (8 N.
W. Rep. 491); *Olmstead v. Proprietors,* 46 N. J. Law, 495;
*Railroad Co. v. Davis,* 43 N. Y. 137; *Spring Valley
Waterworks v. San Mateo Waterworks,* 64 Cal. 123 (28 Pac.
Rep. 447); *Baltimore & O. R. Co. v. Pittsburg, W. & Ky. R.
Co.,* 17 W. Va. 812; *Railway Co. v. Blake,* 9 Rich. Law, 228;
*Railway Co. v. Love,* 81 N. C. 434; *McWhirter v. Cockrell,* 2
Head, 9; *Railway Co. v. Gay,* 32 La. Ann. 472.   *Lynch v.
Forbes,* 161 Mass. 302 (42 Am. St. Rep. 406, 37 N. E. Rep.
437) on which appellees rely, goes no further than to hold
that the necessity for an improvement, and its location, are
for the selectmen of the town to determine.   The appropria-
tion of land in excess or at variance with their powers was not
involved.   In *Stark v. Railroad Co.,* 43 Iowa, 502, it was held
that land within the limit fixed by the legislature for a right
of way is conclusively presumed to be necessary.   *Barrett v.*

*Kemp, supra,* construed a statute essentially differing from that under consideration.

III.    At the request of the defendant the court gave the following instruction: "You are not to assume or consider that the land proposed to be appropriated will not be used in a lawful and proper manner for the purpose proposed by the defendant city, and you will not consider or allow any damages based upon the claim that said land proposed to be condemned will be used in such a manner as to constitute a nuisance or otherwise inconvenience the plaintiff or lessen the value of his premises, except as hereinbefore explained." The portion of this instruction directing the jury that they cannot consider any possible unlawful or improper use of the premises is undoubtedly correct. If the sewer should so be used as to constitute a nuisance, it may be abated. Until the contrary is shown, it will be presumed that the city will construct and maintain it in a lawful manner. *King v. Railroad Co.,* 34 Iowa, 459; *Miller v. Railway Co.,* 63 Iowa, 685. The error in the instruction, however, lies in the prohibition from allowing any damages based on the use of the land so as to "otherwise inconvenience the plaintiff or lessen the value of the premises, except as hereinbefore explained." The exception amounts to nothing, as there is no explanation preceding it. This not only excludes the consideration of the improper use of the land, but also the natural and probable effect of the use for which it is condemned. We think it was proper for the jury to consider in what way the taking of land for the purpose would inconvenience the plaintiff in the use of the remainder of his farm, or lessen its value. If sewers properly constructed would affect the atmosphere, or otherwise interfere with the use and enjoyment of the premises, the jury should take this into consideration in making up their verdict. Such is the rule applicable to the condemnation of land for railroad purposes. *Smalley v. Railroad Co.,* 36 Iowa, 573; *Bell v. Railway Co.,* 74 Iowa, 345; *Ellsworth v. Railway Co.,* 91 Iowa, 391; *Dudley v. Railway Co.,*

77 Iowa, 408; *Dreher v. Railroad Co.,* 59 Iowa, 599; *Kucheman v. Railway Co.,* 46 Iowa, 376. And we discover no reason why the same rule should not govern in the taking by a city.

IV.    In the second paragraph of the instructions the jury are told the material question for their determination is "what was the fair market value of the said land at the time it was taken, to-wit, October 23, 1896"; and in the fifth paragraph the jury are required to use this form of verdict: "We, the jury, find the fair value of the land in controversy was on the 23d day of October, 1896, to be $———." The error of these instructions is manifest. They ignore any possible depreciation in the value of the remainder of the premises resulting from the appropriation of the eighty-six acres by the city. But for an omission, the correct rule was given, in an instruction asked by the defendant, as "the difference between the fair market value of the whole 140 acres immediately before the taking and appropriation of the 86 acres, and the fair market value of the remaining portion of 54 acres immediately after the taking and appropriation of the 86 acres." This should have been qualified so as to exclude any advantages to the owner on account of the improvement. Constitution, article 1, section 18; *Sater v. Plank-Road Co.,* 1 Iowa, 392; *Smalley v. Railroad Co.,* 36 Iowa, 571; *Gear v. Railroad Co.,* 39 Iowa, 23; *Renwick v. Railway Co.,* 49 Iowa, 664; *Hartshorn v. Railroad Co.,* 52 Iowa, 613; *Ham v. Railway Co.,* 61 Iowa, 716; *Ellsworth v. Railway Co.,* 91 Iowa, 386. And, too, these instructions are conflicting, as they furnish the jury different measures of damage. In one, and the form of verdict, the measure is fixed as the value of the land taken; and in the other, the loss occasioned by the taking, made up of its value and the injury to the remainder of the farm. That the jury was in doubt as to which rule must be followed is made apparent by the verdict returned in form as set out, with these words added: "$3,200 for the condemned part." Evidently the second paragraph was followed, rather than the correct rule. REVERSED.