IN RE CONDEMNATION OF CERTAIN LAND.

ADA DEAN HAVNER et al., Appellees, v. IOWA STATE HIGHWAY COMMISSION, Appellant.

No. 45409.

OCTOBER 14, 1941.

REHEARING DENIED JANUARY 23, 1942.

John M. Rankin, Attorney General, G. H. Clark, Jr., Assistant Attorney General, William R. Hart, and M. C. Hamiel, for appellant.

France & France and Margaret I. Cunningham, for appellees.

SAGER, J.—For convenience, Ada Dean Havner will be referred to as if she were the sole appellee.

On July 7, 1937, one Mushrush, division maintenance engineer, and another employee of appellant discovered a workman filling in the ditch along the north side of the pavement and within the public right of way. This discovery led to an exchange of correspondence between White, the chief engineer of appellant, and his subordinates. It resulted, too, in conversations between appellee's husband, who was her representative throughout, and White and two members of appellant commission. We do not overlook the flat contradiction in the testimony but it is unnecessary that we discuss it. If it were a question of veracity between the witnesses the conclusions of the trial court in favor of appellee would have considerable weight. There is little or no real dispute as to the essential facts as we see them.

Appellee owns a farm in Cedar County along the north line of U. S. Highway 30 (also known as Lincoln Highway). The right of way of the Chicago & North Western Railway enters the farm at or near its southeast corner and continues in a northwesterly direction across said land. From about the southeast corner of this land the railroad curves away to the southeast and parallels highway No. 30 for a considerable distance. Before the pavement as it now exists was laid, Lincoln Highway ran east and west along the south line of the Havner land and beyond. When highway No. 30 was built the part of the

old road to the east was left and is still in existence and use as a dirt highway which connects with the pavement near the southeast corner of appellee's land after crossing the railroad tracks.

It was the purpose of appellee to set up a filling and service station in the angle formed by the convergence of highway No. 30 and the railroad right of way; and while leveling and filling of the highway to provide access to the enterprise, her activities were discovered.

On November 10, 1937, White as chief engineer made a certificate and request to the attorney general for the commencement of proceedings and in due course they reached their present state. On the trial there were introduced a great number of charts, plats and profiles and it has been no small task to thread our way to essentials. Nevertheless the situation as it appears on the ground is simple enough; and the principles applicable have been so often stated that they need not be restated. As has been said the trial court found in substance that the proposed taking was not for a public use and dismissed the proceedings. Various considerations seem to sustain that decree, among them these:

Highway 30, as has already been observed, runs east and west along the south side of appellee's farm until it reaches a point at or near the southeast corner. The proposed filling station was to be on the north side so that the taking of the extra seventeen feet on the north of the highway would add nothing to the sight distance of the traveller coming from the west. As the highway veers to the southeast at or near the southeast corner the sight distance of the traveller from the east would not be extended; neither would the vision of the westbound traveller, in his approach to the pavement, be improved.

On the 28th day of November, 1924, it being deemed advisable to widen the highway as it then existed to the north, appellee granted to the commission an additional eight feet. This was deemed sufficient until the filling station project appeared. There have been no condemnations and none contemplated so far as appears from the record, to widen the highway except along this one farm. No further extensions can be made eastward without encroaching upon the railroad right

of way. There appears to be no reason, if it be desirable to widen the highway at this place, that it should not be done on the south side of the road where an admitted obstruction to vision exists.

There seems to have been little consideration by the authorities as to the necessity of more land at this place. There was a formal resolution prepared by Hickok, right-of-way engineer. This was adopted with other resolutions of a similar character before noon on a meeting which began an hour before. It does not appear that the chief engineer looked at the proposed project and one of the two commissioners said that he didn't know anything about it. The other members gave no testimony at all of the necessity of taking this step. So, if we read the record right, the trial court was justified in its finding if it did that the whole proceeding rested on the judgment of the right-of-way engineer alone. As against all this, the reason offered for further widening of the highway is thus stated by a representative of appellant:

"It allows the construction of standard shoulder widths. It allows us to come in and construct a flatter fore slope. It allows the construction of wider ditches to conform with present day standards. It allows a better snow control. It allows, in the safety way, an opportunity for the innocent driver to get out of the way of the fool driver, particularly because it is a point there today where the vision is obscured by the bank on the south side of the road."

This witness went on to say that it afforded better opportunity for drainage conditions and then this:

"And, in general, the more width you have and the less congestion on the right of way that you have at this particular point, the greater the safety to the traffic is concerned, and that is one thing we are looking to more and more every year, is the safety of it and the safe construction of the roads particularly."

If there have been any standards such as these set up by the legislature we have not found them and they exist only as the conclusion of civil engineers. It may be admitted that the wider the highway the better opportunities there would be for

drainage, snow control and other matters referred to, but if the widths of land to be taken were controlled by these opinions then appellant might take one half or all of appellee's or any other landowner's property. We do not read the laws of eminent domain to any such conclusion. We do not overlook our previous expressions on the subject nor are we unaware that great weight should be given to the determination of various municipal and quasi corporations and other bodies organized for public purposes and that their judgment is prima facie correct. But we never have conceded to any such corporations or commissions inerrancy, neither have we at any time decided that the question of what is a public use is not for the courts. We submit the following as cases cited by both parties, citations from foreign jurisdictions being purposely omitted:

Bankhead v. Brown, 25 Iowa 540; Stewart v. Board of Supervisors of Polk County, 30 Iowa 9, 1 Am. Rep. 238; Wilding v. Hough, 37 Iowa 446; Moon v. Cort, 43 Iowa 503; Quinton v. Burton, Road Supervisor, etc., 61 Iowa 471, 16 N. W. 569; Strahan v. Town of Malvern, 77 Iowa 454, 42 N. W. 369; Barrett v. Kemp, 91 Iowa 296, 59 N. W. 76; Bennett v. City of Marion, 106 Iowa 628, 76 N. W. 844; Pillings v. Pottawattamie County, 188 Iowa 567, 176 N. W. 314; Minear v. Plowman, 197 Iowa 1188, 197 N. W. 67; Brush v. Incorporated Town of Liscomb, 202 Iowa 1155, 211 N. W. 856; Pederson v. Town of Radcliffe, 226 Iowa 166, 284 N. W. 145.

On the record before us we reach the conclusion that the trial court was right. The court was warranted in determining that the decision of the commission that appellee's property was necessary for a public use was unreasonable. Other questions argued by the parties have been considered and seem to merit no special discussion. Motion to strike appellant's reply argument has been considered and is overruled. The decree of the trial court is accordingly affirmed.—Affirmed.

MILLER, C. J., and MITCHELL, OLIVER, HALE, and WENNERSTRUM, JJ., concur.