J. O. PORTER et al., appellants, v. IOWA STATE HIGHWAY COMMISSION, appellee.

No. 47701.

(Reported in 44 N.W.2d 682)

November 14, 1950.

Havner & Powers and Bump & Bump, all of Des Moines, for appellants.

Robert L. Larson, Attorney General, Folsom Everest, Assistant Attorney General, and Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellee.

BLISS, J.—In the determination of this appeal the facts are controlling. Near the northeast corporate limits of Des Moines, Primary Highway No. 64 and U. S. Highway No. 6 intersect at a sharp angle. No. 64 extends northeast to Marshalltown from this intersection and No. 6 extends directly east for about two and one-half miles to the town of Altoona, and then generally east over a route with many turns and curves to Colfax, Newton, Grinnell, and points beyond.

The land involved in this condemnation proceeding is between the intersection with No. 64 and Altoona, and the land owned by the plaintiffs is just east of the intersection and lies south of, and abuts on, the right of way of No. 6. The defendant procured most of the land needed for the improvement by negotiation and purchase, but plaintiffs refused to sell, and defendant then proceeded by condemnation. Plaintiffs appealed from the award, and that appeal was pending when the injunction was brought and tried.

In the late twenties, No. 6 was hard-surfaced with a slab of cement and concrete twenty feet in width, with shoulders about five feet wide. For the traffic of that time, when eighty per cent of the motor vehicles in use in the state were Model-T Fords

with a speed limit of thirty or thirty-five miles an hour, and for several years thereafter, the capacity of the highway for traffic was adequate, but with the great increase in the number, size and weight of passenger automobiles, trucks, combination tractor and trailer trucks, busses of various kinds, including large public-carrier busses, and all other motor vehicles, the capacity of the road for several years has been inadequate. The defendant systematically makes counts of the vehicular traffic over the highways of the state. Because of the heavy traffic the hard surface of No. 6 and of other of the older highways had deteriorated. For several years past the defendant has given much attention and consideration to the modernizing of No. 6 and other much used highways to meet the heavy traffic requirements. The engineers of the defendant and its members went into other states to observe the condition of highways, their construction, maintenance and improvement, and to consult those in charge of them with respect to plans and methods for solving traffic problems similar to those in Iowa.

No. 6, east and west across the state, is one of the heaviest traffic roads in the state. Between Des Moines and Grinnell it has been overloaded with traffic. On that portion of No. 6 between Des Moines and Altoona, from No. 64 to Altoona, the average daily traffic is about 3400 vehicles. Only a few primary roads in the state carry that much traffic. Such an average daily traffic is the saturation point or top limit of traffic that can be properly carried on a two-lane highway. Any material increase beyond that means additional traffic lanes. To attempt to carry any such additional increase on a two-lane road would be at considerable inconvenience, annoyance and delay to traffic, and would increase the already serious accident record of No. 6. The right of way of No. 6 averages about 66 feet in width. It is not possible to construct a modern highway on a 66-foot right of way. The standard width of right of way for a two-lane road is 120 feet—60 feet on each side of the center line. That is the minimum standard. Where the topography of the country is rough, hilly, and there are deep cuts and high fills, a wider right of way than 120 feet is required. A 5-foot shoulder on a main trunk highway is wholly inadequate.

The plans of the project involved herein, as required by standard and proper road building and the regulations and requirements of the United States Bureau of Roads, called for shoulders 10 feet wide, a fore slope from the outside edge of the shoulder to the ditch of 3 to 1—3 feet horizontal to 1 foot vertical; a ditch 8 feet wide and a back slope 2½ to 1 to the private property line. Both slopes must be rounded to prevent erosion and to get a good growth of vegetation and sod. Vegetation, particularly sod, will not grow on a sharp angle, and maintenance care and costs are increased by such slopes. The 3 to 1 slope is approximately the minimum to get proper drainage, prevent erosion, and for flatness to get vegetation to grow, and also as a safety factor if a car should run off the pavement into the ditch. Drainage of highways is very essential to their maintenance. The slopes given above and the rounded crowns and the broad flat ditch are all requirements of the United States Bureau of Roads for Federal-Aid road projects. Unsightly and badly eroded banks, sometimes cutting through the property line, interfere with drainage from both the highway and the farm land, and soak up the roadway. The wide ditch is necessary to pile snow in, and not on the adjacent property. Snow piled on the shoulders acts as a snow fence to fill the traveled way with drifting snow.

The foregoing statement of facts is summarized from the testimony of Fred R. White, chief engineer of the defendant, R. C. Boyd, designing engineer of defendant, Fred B. Gilbert, a member of the defendant-commission since 1943, and Sanford Zeigler, a member of the commission since 1943 and its chairman at the time of the trial. Mr. White graduated from Iowa State College with the degree of Bachelor of Science of Civil Engineering in 1907. He started Iowa highway work in 1908, and, except for about ten months in 1910 and 1911, has been at all times since with the defendant and has been a leading factor in developing Iowa highways from mud roads to their present condition. Mr. Boyd graduated from Iowa State College as an engineer in 1923, had been engaged as construction engineer for the commission for twenty-four years, and has been designing engineer for about one year.

All of these men are familiar with the Federal-Aid requirements for United States roads in Iowa relative to their construction and maintenance. Mr. Boyd's department, under his supervision, designed the improvement now being made east of Des Moines on No. 6. It has been designed and contracted up to Newton (approximately) and the designing is in progress east of that point.

The minutes of the meeting of defendant of January 21, 1948, show the first formal action respecting the widening and hot-mix-bituminous surfacing of No. 6 from Des Moines to Newton, No. 69 from Ames to Ankeny, and No. 18 from Nora Springs to Charles City. Mr. White was directed to proceed with the preliminary work. Pavements 18 feet wide having average annual traffic less than 3000 vehicles and those 20 feet wide where such traffic exceeded 3000 vehicles were ordered to be resurfaced and widened two feet on each side. Both the preliminary and the construction plans and specifications must be submitted to and approved by the United States Bureau of Roads. This was done and the approval received and the improvement was authorized. All rules and regulations of the United States Bureau of Roads must be complied with. This is necessary in order to receive federal aid. This aid does not exceed fifty per cent of the construction costs. The plan for No. 6 called for shoulders, slopes and ditches as above specified.

It was stipulated that some years back, prior to the designing of this project, the defendant had acquired the right of way of the defunct Des Moines & Central Iowa Railway which went into receivership and abandoned its line from Des Moines to Colfax. This right of way which defendant purchased is about two miles long and its width varies from 100 feet for the most part down to 80 feet. In some places the width exceeds 100 feet. It abuts No. 6 along its north side, and with the 66-foot right of way of No. 6 and the 100-foot-railroad right of way the defendant owns or controls a total width of 166 feet in front of plaintiffs' property.

At a meeting of defendant and its engineers on February 18, 1948, Mr. White reported that since the meeting of January 21, 1948, when he was authorized to proceed with the preliminary work, careful inspections had been made of the road, and that,

due to narrow right of ways and narrow cuts and fills, narrow bridges and culverts it did not appear possible to do the widening and resurfacing of the pavement in 1948; and that before any proper work could be done, additional right·of way must be secured and the cuts and fills on the road widened. He informed the defendant that the whole road was so inadequate for traffic it was impossible, under the conditions, to do all the things needed to be done to the road to get it up for construction in 1948. On July 20, ·1949, the defendant approved the report of the condemnation jury with respect to the property taken from the plaintiffs.

Defendant proceeded with the construction work without awaiting the outcome of plaintiffs' appeal from the condemnation awards.

Plaintiffs filed their petition in the suit on appeal before us on July 27, 1949, alleging, in substance, that: defendant is attempting to appropriate their property *"contrary to law and for a purpose which is not legitimately for a public improvement * * * for a use which is not a public use and for a use which, under the circumstances, is unreasonable,"* in that defendant now has a right of way along all of the property immediately joining the north line of existing No. 6, *"purchased for the express purpose of building a highway thereon and better adapted for widening the highway than is the property of the plaintiffs."* (Our italics are for identification.)

Defendant by its answer denied the italicized allegations and alleged that "the proceedings in the condemnation and taking of the land * * * for highway purposes * * * were all taken in conformity with the provisions of the statutes and Constitution of the State of Iowa, and were legal and proper in each and every respect."

Plaintiffs used two witnesses, John W. Budd, of Des Moines, and Marvin O. Kruse, of Muscatine. The first named received a degree of Bachelor of Civil Engineering in 1902. He had been City Engineer of Des Moines about ten years, Superintendent of Streets for ten or twelve years, and a member of the City Council of Des Moines for fourteen years. He testified that he was familiar with No. 6 for a distance of at least two miles east of No. 64, and with the abandoned railway right of way. Answer-

ing a hypothetical question, assuming the defendant's ownership of the old right of way and the present right of way, of No. 6, he expressed his opinion that for the purpose of widening the cement slab of No. 6 four feet he "wouldn't think" it necessary to acquire additional land. This was the substance in full of his testimony.

Mr. Kruse received a Bachelor of Science degree in Civil Engineering at Iowa State College in 1933 and a Masters Degree in Mechanics and Hydraulics at Iowa State University in 1940. He is a partner in the Stanley Engineering Company at Muscatine. His experience in road construction was entirely in the Army. He had examined the ground involved and the construction plats, and had observed the cement slab before and after resurfacing. Asked a hypothetical question, substantially the same as submitted to Mr. Budd, he answered that it was "possible" that four feet could be added to the concrete slab without acquiring additional ground, and that in his opinion it was not necessary to take additional ground south of No. 6. He also said he thought the four feet could all be added to the north side of the pavement. He admitted that present-day machinery is designed for making a two-foot addition on each side of the slab, and is not designed nor constructed to make a four-foot addition on but one side. In rebuttal, Mr. Kruse gave his opinion that if a tile drain were placed beneath the outer edge of a road shoulder with grills or open catch basins to receive the surface water from the pavement, the water could then be carried by the tile to a "slight" gutter in the ditch, and thus eliminate a ditch as wide as the plans required. He testified that he had seen such drainage somewhere, and then qualified his answer by stating: "It is the exception, rather than the rule. I will grant that."

Mr. White testified that the railroad right of way was not considered in making the present improvement. It was purchased for the purpose of future use when something more than a two-lane road would be needed. We take from the printed record this testimony of Mr. White on direct examination:

"Q. What do you say as to whether the plan for widening and resurfacing was a permanent or temporary solution to the problem, so far as this highway was concerned? A. As to its

physical aspects the plan for widening and resurfacing U. S. Road No. 6 between Des Moines and Newton provided for a relatively permanent improvement. It certainly is more than a temporary improvement. It would be difficult to state, when I say relatively permanent improvement, just how many years that might encompass. As to traffic carrying aspects, the plan for widening and resurfacing U. S. Road No. 6 between Des Moines and Newton is of a relatively temporary nature. The plan as carried out is approximately sufficient to provide for the needs of present-day traffic. It is not sufficient to provide for the needs of traffic very far into the future. Traffic on these roads is increasing. We are now up to somewhere near the practical capacity of a two-lane road, that is, the traffic on U. S. Road No. 6 at this point is. The next step in the solution of the problem will be construction of additional traffic lanes. We have taken that into consideration."

It was Mr. White's opinion that from a safety standpoint and as a carrier of traffic the four-lane highway was considered the best and the best adapted to present-day traffic. He had made recommendations to the defendant with reference to the building of an entire new road, but then recommended widening and resurfacing instead. The considerations that led to this were that the then narrow pavement was wholly inadequate and something had to be done to provide for better traffic facilities on this road. There were no funds available at that time for complete construction and modernization of the whole road and four traffic lanes, and the best the commission could possibly do with the funds available or becoming available was to make provision that would take care of the immediate traffic, and let the future take care of itself. It was the conclusion of himself and his engineers and the commission that the present improvement has a limited period of adequacy. It will last several years, but within a relatively few years additional lanes of traffic will have to be provided. The present-day traffic requires a 10-foot shoulder. It is not possible, consistent with proper road-building standards of the present day, to make a 10-foot shoulder and provide adequate drainage by use of tile on a 66-foot right of way, because, in addition to the shoulder, there should be room for an adequate open ditch along the roadside to not only drain the surface water from the highway, but

**1216**

to prevent the water from adjacent properties running onto the road, and also to provide storage place for snow.

■ The trial court briefly reviewed the evidence and in its findings of fact and conclusions of law determined that plain-, tiffs had not established the allegations of their petition nor met the burden of proof placed upon them. From our review de novo of the evidence and the entire record we reach the same conclusion.

I. In their printed argument in this court the plaintiffs state: "There is but one question presented by this record and that is whether, under the facts as disclosed by this record, the defendant * * * has the right to take property of plaintiffs for highway purposes." Their argument is upon this brief point: "The right to take private property for public use.is based upon necessity and, if the necessity is not shown by satisfactory evidence, there can be no taking of private property."

In support thereof plaintiffs cite Bennett v. City of Marion, 106 Iowa 628, 76 N.W. 844; In re Condemnation of Certain Land (Havner v. Iowa State Highway Comm.), 230 Iowa 1069, 300 N.W. 287; Creston Waterworks Co. v. McGrath, 89 Iowa 502, 56 N.W. 680; 18 Am. Jur., Eminent Domain, section 107, page 734, and decisions from other jurisdictions.

■ We find no fault with the legal proposition stated nor with the cited decisions of this court. Section 313.25, I. C. A. (Codes 1946 and 1950) provides that the State Highway Commission in its establishment or improvement of roads may condemn land for the "necessary right of way therefor."

There is no question that defendant had the authority and right to take the property involved if it was necessary for highway purposes. It was authorized under section 313.1, I. C. A. (Codes of 1946 and 1950) to comply with federal statutes and requirements in Federal-Aid projects for highway improvements. There is no evidence that defendant did not act in good faith and without fraud or oppression. The facts in this case are much different from those in Havner v. Iowa State Highway Comm.; supra, and the decision in that case does not control the decision in this one. The necessity for the taking of plaintiffs' property for the purpose of improving existing traffic facilities and needs and as part of a plan for meeting traffic requirements

in the future was amply sustained by the evidence. Defendant had purchased the railroad right of way for use in the future when additional traffic lanes will very likely be needed. The present pavement and right of way of No. 6 can be used in such future plan. But for either present or future use additional ground is necessary to provide a 10-foot shoulder and an 8-foot ditch with adequate and proper fore and back slopes south of the paved slab. The uncontradicted evidence is that a two-lane highway such as No. 6 is, in order to properly serve present-day traffic, requires a right-of-way width of 120 feet. Its width as constructed was but 66 feet. Plaintiffs contend that part of the railroad right of way should be used to supply this additional width. The evidence is that to so reconstruct No. 6 would cost $166,038.21, while the cost of the improvement as now being made is $81,867.48, excluding the condemnation cost of plaintiffs' land.

The authority and power of the defendant in establishing, maintaining and improving the highways of the state is broad and plenary, and it is only in the exceptional case where such authority and power has been manifestly abused that a court may interfere.

This is not such a case.

The decree of the district court is—Affirmed.

All JUSTICES concur except HALE, J., not sitting.